26466.   BANKS v. THE STATE.

ARGUED APRIL 12, 1971—DECIDED MAY 6, 1971.

*A. J. Welch, Jr.,* for appellant.

*Edward E. McGarity, District Attorney, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, Mathew Robins, Assistant Attorneys General,* for appellee.

ALMAND, Chief Justice. Under an indictment charging him with the killing of Robert Walker by shooting him with a pistol, Jerry Banks was found guilty on his trial and sentenced to life imprisonment. His amended motion for a new trial was overruled. His appeal is from the conviction and sentence. Error is enumerated on the overruling of his motion for a new trial on the general grounds and four special grounds.

■ The seventh ground of the motion for a new trial asserted that the court erred, even in the absence of a request, in failing to charge on the law as to voluntary manslaughter.

The defendant's defense was that he shot the deceased in defense of his brother, Ludie Banks, and in defense of his life.

The evidence was substantially as follows: Jerry Banks, and the deceased, Robert Lee Walker, attended a birthday party at Willie Albert's home on State Route 155 in Henry County, Georgia, on June 6, 1970 (T-34). During the course of the evening, the deceased slapped the defendant appellant's brother's wife, Ozella Banks (T-28). The defendant appellant's brother, Ludie Banks, was notified of the slapping incident and went to the Alberts' home. The deceased had in his possession a shotgun, but the shotgun was taken from the deceased's possession prior to Ludie Banks' arrival (T-15, 40). Upon arriving at the Alberts' house, Ludie Banks first called for his brothers and then entered the house (T-30). When Ludie Banks entered the front part of the house, the deceased attacked him. After a short scuffle, the parties were separated by Willie Roy Dodson (T-23). The deceased remained in the house and Ludie Banks went to his car parked in the Alberts' driveway (T-23, 30).

Another fight erupted between George Albert and Willie Albert (T-15). Each man had an opened knife drawn (T-8, 15, 16). During the scuffle one of the knives dropped to the floor, and the deceased picked up the knife and made his way out the door (T-15, 40). These events were described by the following testimony of

Essie Albert. "Well, after my husband had slapped George down and I happened to look back—whatever before they was arguing and I happened to look back and Robert Lee Walker had the shotgun and so, while I was talking to him, George called Willie Albert 'a gray-headed son-of-a-bitch' and he slapped him down. So, Robert turned from me and went there in front of where George was and picked up the knife and I caught him by the sleeve and said, 'Hon, don't go out there,' and he said he just wanted to go out there and get something straightened out." (T-15). The deceased left the house with an opened knife in his hand (T-16, 18, 30) and proceeded to Ludie Banks' car which was about five or six feet from the porch of the Alberts' house (T-30, 34). The evidence further showed that the deceased approached Ludie Banks and placed his arms around Ludie Banks' shoulders (T-31, 36, 37) with an opened knife in his hand (T-37).

At this point the defendant appellant yelled to the deceased, "Don't cut that boy" (T-31, 32, 37, 40). The evidence was uncontradicted that after the verbal warning, there were three shots fired by the defendant appellant (T-5, 25, 32, 33, 37, 38, 40, 41). The first shot was made right after the defendant appellant gave the verbal warning to the deceased not to cut his brother (T-32, 37, 40). Seeing the open knife in the deceased's hands, Ludie Banks pushed him away (T-31, 34, 37). A second shot was fired in the air (T-33, 37, 41). The deceased then made an advance on the defendant appellant with the open knife in his hand (T-33, 37, 38, 41). The defendant appellant retreated before firing a third shot which resulted in the death of Robert Lee Walker (T-33, 37, 38, 41). The deceased fell back against Ludie Banks, cutting him with the knife in his hands.

On the trial of a murder case, if there be any evidence, however slight, as to whether the offense is murder or voluntary manslaughter, instruction as to the law of both offenses should be given the jury. *Gresham v. State*, 216 Ga. 106 (115 SE2d 191).

The evidence in this case was sufficient, independently of the defendant's statement, to make a case involving voluntary manslaughter and it was error for the court to fail to charge thereon, even in the absence of a request. *Faust v. State*, 208 Ga. 53 (65 SE2d 148); *McDaniel v. State*, 209 Ga. 827 (76 SE2d 500).

■ The following instructions of the court were not erroneous for any of the reasons assigned:

"I charge that if you find the defendant acted in this case in justifiable defense of himself or of a third person, the defendant's brother, as contended by the defendant, under the principles of law I have given you in charge, it would be your duty to find the defendant not guilty.

"If you do not believe the defendant is guilty of the offense of murder, or if you have a reasonable doubt as to his guilt, the form of that verdict would be, 'We, the jury, find the defendant not guilty.'

"I charge that if you find the defendant acted in this case in justifiable defense of himself or of a third person, the defendant's brother, as contended by the defendant, under the principles of law I have given you in charge, it would be your duty to find the defendant not guilty."

For failure to charge the law as to voluntary manslaughter a new trial is granted.

*Judgment reversed. All the Justices concur.*